IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Angela Jerding, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No.: 19-cv-50088 |
| v. | ) |
| | ) Mag. Judge Margaret J. Schneider |
| Andrew Saul, Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angela Jerding seeks review of the Administrative Law Judge's denial of her application for disability benefits under the Social Security Act.[1] The ALJ issued a partially favorable decision, finding that Plaintiff was disabled from June 1, 2014 to June 1, 2016, but that her disability ended thereafter. R. 17. Plaintiff now seeks disability benefits after June 1, 2016. For the reasons set forth below, Plaintiff's motion for summary judgment, Dkt. 15, is denied, the Commissioner's motion for summary judgment, Dkt. 20, is granted, and the ALJ's decision is affirmed.

## BACKGROUND

A. Procedural History

On March 11, 2015, Plaintiff Angela Jerding ("Plaintiff") filed an application for disability insurance benefits. R. 245-51. She alleged a disability beginning on June 1, 2014. R. 245. The application was denied initially on September 11, 2015, and upon reconsideration on April 13, 2016. R. 132, 201. Plaintiff filed a written request for a hearing on June 10, 2016. R. 208. On July 24, 2017, a hearing was held by Administrative Law Judge ("ALJ") Jessica Inouye. R. 42. Plaintiff, represented by an attorney, appeared and testified. *Id.* An impartial vocational expert also appeared and testified. *Id.* On April 20, 2018, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled from June 1, 2014 to June 1, 2016, but that her disability ended thereafter. R. 17-35. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 6-11. Plaintiff subsequently filed the present action seeking judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

---

[1] On January 12, 2020, Jerding passed away due to complications of her congenital heart condition. Dkt. 30, at 1. Her daughter, Kira McConkey, subsequently became the substitute party in this lawsuit. Dkt. 34.

B. Plaintiff's Medical Background[2]

Plaintiff was hospitalized in June 2014 due to erythema multiforme with a peeling pustule rash. R. 369. Subsequently, Plaintiff sought follow-up treatment for ongoing rashes, swelling in her legs, and chronic pain due to the pustule nature of the skin changes. R. 714-766. She was hospitalized for two days from December 18, 2014 to December 20, 2014, where she was admitted to the burn unit. R. 569. In January 2015, Plaintiff reported ongoing psoriasis, aggravated by stress. R. 510.

In March 2015, Plaintiff met with her cardiologists and underwent an echocardiogram which showed preserved left ventricular systolic function at 65% with some severe concentric left ventricular hypertrophy, severe pulmonic valve stenosis, and severe pulmonary hypertension with right ventricular enlargement and moderate right ventricular hypertrophy but not normal function. R. 659. She was referred for a cardiac MRI, a stress test, and Holter monitor recording. R. 663. In August 2015, Plaintiff was admitted to the Emergency Room for shortness of breath. R. 1030. A cardiac MRI study showed hypertrophic cardiomyopathy with left ventricular outflow tract obstruction, right ventricular outflow tract obstruction, and no significant aortic or pulmonary valvular disease. R. 1041. Her medication was adjusted, she was advised regarding her diet, and she was told to follow up with her cardiologist. R. 1043, 1084.

In September 2015, Plaintiff reported to her doctor that she was trying to find work, she was cleaning out her mother's home, and she was feeling stressed. R. 1128-29. She was told to continue her medications and to exercise and attempt to lose weight. R. 1129. Her skin examination showed some improvement. R. 1176. Plaintiff decided to pursue an implantable cardiac defibrillator. R. 1466. The procedure was performed and she was discharged with advice to avoid lifting for six weeks. R. 1479. She continued to report shortness of breath and was subsequently diagnosed in November 2015 with chronic diastolic heart failure New York Heart Association Class II-III, hypertrophic cardiomyopathy, RV outflow tract obstruction, and status post ICD, and hypertension. R. 1419. In January 2016, Plaintiff reported to her cardiologist that she was feeling fairly well and continued to experience mild dyspnea as well as intermittent mild lower extremity edema. R. 1503.

Just prior to returning to full time work, in May 2016, Plaintiff told her doctor that her anxiety had reduced but she continued to feel anxious about her heart. R. 1227. She had not sought treatment with her cardiologist and was not complying with low sodium dietary recommendations. *Id*. She continued to work and was trying to work up to getting a full-time job. R. 1228. In June 2016, she returned to full time work. She also met with a dermatologist regarding lesions in her groin, trunk, and arms. R. 1574-75.

In July 2016, Plaintiff reported to her doctor occasional shortness of breath and edema but said that she was "doing okay," and she did not use or require her inhaler unless she was exercising, which she was not doing regularly. R. 1222. She was also not complying with her diet. *Id*. She reported that she felt overly sedated on Zoloft and had no energy or motivation. *Id*. She was working as a maid without difficulty and spent her free time watching television. *Id*. She rated

---
[2] The Court will summarize Plaintiff's medical history that is relevant to this appeal. This section does not represent Plaintiff's entire medical history.

her anxiety at 2/10 with medication and said that her "fluttering" and shortness of breath had improved with Zoloft. *Id.* She told her cardiologist that she was experiencing daily palpitations as well as intermittent lower extremity edema. R. 1526. Her cardiologist elected to adjust her medication and recommended a stress test. R. 1532-33. She was not referred to surgery at that time. R. 1534. Also, in July 2017, she established treatment with a rheumatologist for aching pain and was preliminarily diagnosed with diffuse myalgia. R. 1250-52.

In December 2016, Plaintiff reported to her doctor that she was noncompliant with her diet and had been working from 7:00 a.m. to 3:00 p.m. and living with her friend. R. 1214. She said that she was unable to go to her job because her car needed repairs and this caused her to feel depressed. *Id.* Her physician elected to prescribe Citalopram to manage her symptoms. *Id.* She was also told to stay home from work by Emergency Room physicians due to a sinus infection for a few days at the end of December. R. 1364, 1366.

In February 2017, Plaintiff reported to her doctor that she was very fatigued on her medication and that she was maintaining irregular sleep hours and going to nightclubs to watch her brother's band play. R. 1201. She reported that she had been fired on January 10, 2016, she was attempting to find a job, and was interviewing and trying to obtain employment at Target with 12-hour shifts. *Id.* If she did not have an interview, she said that she spent all day sleeping and occasionally crying. *Id.* She reported that her psoriasis was fair, but she had not made time to follow up with her dermatologist and she was busy caring for a friend with diabetes. *Id.* She also said that she was less sad. *Id.*

C. The ALJ's Decision

The ALJ went through the five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since June 1, 2014, when Plaintiff became disabled. R. 20. At step two, the ALJ found that Plaintiff had the following severe impairments from June 1, 2014 to June 1, 2016: depression, anxiety, learning disability, cardiomyopathy, congestive heart failure, obesity, asthma, sleep apnea, pulmonary hypertension, psoriasis, Stevens-Johnson syndrome, and diffuse myalgia. R. 20. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Appendix 1 from June 1, 2014 to June 1, 2016. R. 21. Before moving to step four, the ALJ found that, from June 1, 2014 to June 1, 2016, Plaintiff had a residual functional capacity (RFC) to perform sedentary work with the following exceptions: she could never climb ladders, ropes, or scaffolding, and could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she should avoid concentrated exposure to pulmonary irritations, extreme temperatures, and humidity; she should avoid all exposure to hazards including unprotected heights and dangerous moving machinery; she can learn, understand, remember, and carry out simple work tasks and sustain these tasks in two hour increments throughout the typical workday; and she must be permitted additional rest breaks due to difficulty breathing and sustaining work activity beyond the tolerances allowed in unskilled work in excess of 5% beyond breaks and lunches. R. 23. At step four, the ALJ found that Plaintiff could not perform any past relevant work from June 1, 2014 to June 1, 2016. R. 27. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were

no jobs that existed in significant numbers in the national economy that Plaintiff could have performed. R. 27. Thus, the ALJ found that Plaintiff was disabled from June 1, 2014 through June 1, 2016. R. 28.

After determining that Plaintiff was entitled to disability benefits for the designated 2014 to 2016 time period, the ALJ went through an eight-step analysis to determine if Plaintiff's disability continued after June 1, 2016 or ended at that point. *See* 20 C.F.R. § 404.1594(f). At step one, the ALJ determined that Plaintiff had worked in excess of substantial gainful activity for a brief period since June 2, 2016, the date her disability ended. R. 28. At step two, the ALJ found that Plaintiff did not develop any new impairments and that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 since June 2, 2016. R. 29. Before reaching step three, the ALJ found that Plaintiff had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, as of June 2, 2016. R. 29. At step three, the ALJ found that medical improvement occurred as of June 2, 2016. R. 30. At step four, the ALJ determined that the medical improvement was related to the ability to work because there was an increase in Plaintiff's RFC. *Id.* If the ALJ had found that the medical improvement was not related to the ability to work, then the ALJ would have considered if an exception applied. At the next step, the ALJ found that Plaintiff's RFC was to perform sedentary work except that: she could never climb ladders, ropes, or scaffolding, occasionally climb ramps or stairs, balance, stoop, kneel crouch, and crawl; she should avoid concentrated exposure to pulmonary irritations, extreme temperatures, and humidity; she should avoid all exposures to hazards including unprotected heights and dangerous moving machinery; and that she can learn, understand, remember, and carry out simple work tasks and sustain them in two hour increments throughout the typical workday. R. 30-31. The ALJ also found that Plaintiff was still unable to perform past relevant work. R. 34. Finally, the ALJ found that beginning June 2, 2016, considering the Plaintiff's age, education, work experience, and residual functional capacity, there were jobs in significant numbers in the national economy that Plaintiff could perform. *Id.* Thus, the ALJ found that Plaintiff was not disabled since June 2, 2016. R. 35.

## STANDARD OF REVIEW

The reviewing court assesses the ALJ's decision to determine if it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (internal quotation omitted). As such, "the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations." *Corey Z. v. Saul*, No. 18 C 50219, 2019 WL 6327427, at *9 (N.D. Ill. Nov. 26, 2019) (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). The ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (internal quotation omitted). An ALJ must only "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). However, even when sufficient evidence exists to support the ALJ's decision, it will not be

affirmed where the ALJ has not built an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Further, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *19-20 (N.D. Ill. Oct. 29, 2014).

## DISCUSSION

The ALJ issued a partially favorable decision for Plaintiff, finding that Plaintiff was disabled from June 1, 2014 to June 1, 2016. In her motion for summary judgment, Plaintiff seeks disability benefits after June 1, 2016. Plaintiff raises two arguments in support of her request for reversal: first, that the ALJ erred by finding medical improvement in her heart condition and psoriasis without consulting a medical expert; and second, that the ALJ improperly failed to conclude that Plaintiff's return to work was an unsuccessful work attempt.

A. Medical Improvement Finding

Plaintiff argues that the ALJ erred by not consulting a medical expert to support her finding of medical improvement. "Medical improvement" is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). The Seventh Circuit has explained that "[b]efore limiting benefits to a closed period, an ALJ must conclude either that a claimant experienced 'medical improvement' as evidenced by changes in the symptoms, signs, or tests results associated with her impairments, or else that an exception to this rule applies." *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011). "'Medical improvement is not synonymous with complete recovery and absence of signs and symptoms; it is merely 'any decrease in medical severity.'" *Elizabeth A. v. Saul*, No. 19 C 6024, 2021 WL 148831, at *3 (N.D. Ill. Jan. 15, 2021) (internal citation omitted). "Where as here, the ALJ finds the claimant disabled for a closed period in the same decision in which she finds medical improvement, the severity of the claimant's current medical condition is compared to the severity of the condition as of the disability onset date." *Marvietta H. v. Saul*, No. 19 C 610, 2020 WL 7698369, at * (N.D. Ill. Dec. 28, 2020).

Plaintiff argues that the ALJ was not qualified to determine that there was medical improvement without consulting an expert, but she has pointed to no objective evidence to support such a finding under the regulations. Instead, Plaintiff claims that a remand is required because the ALJ failed to develop the record. Plaintiff explains that, as a result of the ALJ's failure to obtain an updated medical expert to evaluate the newly submitted evidence from Plaintiff's cardiologist and other treating physicians from July 2016 onward, she interpreted raw medical data unfairly. As a result, Plaintiff argues, the ALJ's finding that there was medical improvement was inconsistent with the record. The Commissioner, on the other hand, argues that the ALJ is empowered to assess whether medical opinions are consistent with the underlying medical evidence, which is what she did here. The Commissioner is correct: the ALJ functions as the agency's factfinder, such that assessing whether opinions are consistent with the record was within the ALJ's discretion. *See Gibbons v. Saul*, 801 F. App'x 411, 416 (7th Cir. 2020); *Primm v. Saul*, 789 F. App'x 539, 545 (7th Cir. 2019).

5

As the Commissioner points out, the ALJ evaluated evidence of Plaintiff's condition after June 1, 2016, in detail. She detailed the work that Plaintiff did in 2016 and 2017 and remarked that Plaintiff "did not discontinue her work activity secondary to any limitations associated with her medically determinable impairments." R. 28. As for Plaintiff's specific medical conditions, the ALJ's ruling shows that she had reviewed the medical records as to each and either noted improvement or that Plaintiff was not seeking treatment. R. 31 (noting that Plaintiff reported occasional shortness of breath and edema, but said she was "doing okay") (citing Ex. 20F/26); R. 31 (noting that Plaintiff rated her anxiety at 2/10 from 7/10 with medication and that her "fluttering" and shortness of breath had also improved with Zoloft) (citing 20F/26); R. 31 (noting that Plaintiff had anxiety about heart symptoms but had not sought treatment from a cardiologist and was noncompliant with recommended diet) (citing 20F/26). The ALJ also found that Plaintiff testified to psoriasis flares but failed to pursue any treatment for them and upon examination they showed only mild lesions. R. 33. The ALJ further found that Plaintiff was working during this time period and that she did not pursue treatment for her shortness of breath. *Id.* The ALJ noted that Plaintiff testified that she was often stressed and unable to cope but found this unsupported by treatment notes that she was attempting to find work, going to nightclubs, spending time with family and friends, and that she generally was not stressed. *Id.* Accordingly, the ALJ weighed the evidence and concluded that Plaintiff's claims that her medical conditions interfered with her ability to function were refuted by objective treatment notes and diagnostic testing. That determination was supported by substantial evidence. *Moore*, 743 F.3d at 1120.

B. Substantial Gainful Activity Finding

Plaintiff's second argument is that the ALJ erred in basing her medical improvement finding on Plaintiff's return to the work force, because her work activities after the closed period of disability should have been classified as a failed work attempt. Plaintiff argues that her work as a home health aid and as a quality controller was an "unsuccessful work attempt" because of the difficulty she had in performing her jobs due to her poor health.

"'Gainful employment' does not include 'unsuccessful work attempts.'" *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (quoting 20 C.F.R. § 404.1574(c)). However, "[t]he Social Security regulations themselves set the date at six months after which a work period cannot be deemed an 'unsuccessful work attempt.'" *Janezich v. Barnhart*, 453 F. Supp. 2d 1019, 1029-30 (N.D. Ill. 2006) (quoting 20 C.F.R. § 404.1574(c)(5)). An "unsuccessful work attempt" occurs when the claimant has "worked for a period of 6 months or less." 20 C.F.R. § 404.1574(c)(1). Alternatively, "gainful employment is presumed if the applicant earned more than the specified monthly minimum for more than six consecutive months." *Kangail*, 454 F.3d at 630.

Collectively, Plaintiff's jobs from June 2, 2016 through January 2017, as a home health aide and as a quality controller, lasted approximately seven months, disqualifying that work from a finding of an unsuccessful work attempt. R. 28. Moreover, over that seven-month period she earned $7,569.25. *Id.* The ALJ found that this amount was more than the presumptively disqualifying substantial gainful activity earnings for that time period. R. 28. Since gainful employment is presumed if the applicant earned more than the specified monthly minimum for more than six consecutive months, the ALJ was entitled to count the quality control job as gainful employment and not an unsuccessful work attempt. 20 C.F.R. § 404.1574(b)(2); *Kangail*, 454

6

F.3d at 630. Similarly, Plaintiff's home health aide job that preceded it counts because the only reason Plaintiff gave for leaving it was to start work at the subsequent job. *Kangail*, 454 F.3d at 630 (counting a preceding job because "the only reason the plaintiff gave for leaving it was to get a higher-paying job").[3]

The Court therefore finds that the ALJ did not err in finding that Plaintiff engaged in presumptively disqualifying substantial gainful activity after June 2, 2016 through January 1, 2017 as part of her finding of medical improvement. The Court also notes, as set forth previously, that this was only one part of the ALJ's finding of medical improvement. In addition to Plaintiff's work activity, the ALJ found that the record showed that the Plaintiff "pursued minimal treatment for her allegedly disabling impairments, she searched for work, attended events outside of her home, and her objective examination findings support that she regained functioning in terms of exercise tolerance and an improved mood." R. 30.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment, Dkt. 15, is denied, the Commissioner's motion for summary judgment, Dkt. 20, is granted, and the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of the Commissioner and against Plaintiff.

Date: May 10, 2021  ENTER:

*Margaret J. Schneider*
United States Magistrate Judge

---

[3] Of note, in his response brief, the Commissioner argued that the reasons Plaintiff stopped working are not relevant to the unsuccessful work attempt analysis where the claimant has worked for a period greater than six months, but Plaintiff ignored this argument in her reply brief. A failure to respond to an argument raised by the opposing party on appeal results in waiver. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.") The Court finds that Plaintiff has also waived her argument relating to the time period qualifying her work as gainful employment.